IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

H.L.,
INDIVIDUALLY AND AS AND ON BEHALF
OF AND AS PARENT AND NATURAL
GUARDIAN OF K.L.,

       Plaintiff,                         06cv0284

       v.                              **ELECTRONICALLY FILED**

WESTMORELAND COUNTY, ET AL.,

       Defendants.

## Memorandum Opinion

### I.    Introduction

This is a civil rights action brought pursuant to 42 U.S.C. § 1983.  Plaintiff, who is the father and natural guardian of minor K.L. alleges that defendants, acting under color of state law, violated his constitutional rights under the First Fourth and Fourteenth Amendments, in failing to protected his procedural and substantive due process rights, as well as his right to familial associations when they improperly or inadequately investigated certain reports of abuse during child custody proceeding to which plaintiff was a party.  Currently pending before this Court is defendants' motion for summary judgment (doc. no. 31), and plaintiff's response thereto.  After careful consideration, and for the reasons that follow, this Court will grant defendants' motion for summary judgment.

### II.    Background Facts

The facts as set forth in the parties statements of facts be fairly summarized as follows:[1]

---

[1]This Court's Case Management Order of May 9, 2006 (doc. no. 16) requires movant to file a joint concise statement of material facts.  Movant has failed to do so here.  However, the Court has assimilated the parties respective statements of facts (over 55 pages in length) and has gleaned the following factual background.

Plaintiff, H.L., is the natural father and Nicole Kaufmann (mother) is the natural mother of K.L., a minor who is now 8 years old.  K.L and mother resided together for one or two months after K.L.'s birth, but mother eventually began a new relationship with Frank Giron, with whom she currently resides.  For several years, H.L. and mother mutually agreed upon a custody arrangement without court intervention; however, in 2001, that agreement broke down and a custody action was commenced by H.L. on January 15, 2002.  During the course of the custody proceedings, which have been described as "contentious," there were numerous allegations of abuse made, first against H.L. parents (K.L.'s paternal grandparents), and later against H.L.

The first allegation of abuse against H.L's parents occurred in November of 2001 (prior to the institution of custody proceeding), and that allegation was investigated by Westmoreland County Child Services (WCCB) worker defendant Shannon Kalp (now Shannon Haywood). That investigation included a psychological evaluation by Mercy Children's Medical Center.  A report was issued by Mercy ("the Mercy report") on December 18, 2001, and according to the report, the psychologist could not make an affirmative determination whether K.L. had been sexually abused.  However, it was noted in that report that the mother's paramour, Frank Giron should be investigated for potential involvement in a sexually abusive relationship with K.L.[2]

Although defendants allege that all records regarding the abuse referrals were expunged and destroyed, pursuant to the Department of Public Welfare regulations (23 Pa.C.S. § 6337), plaintiff disputes that contention and states the Mercy report was not expunged.

---

[2]Another referral of abuse was made against H.L.'s parents, and that report was ultimately determined to be unfounded.  The three levels of findings relative to an abuse report are "founded" (a judicial finding of abuse), "indicated" (substantial evidence of abuse), and "unfounded" (any report that is not founded or indicated).

During the pendency of the custody proceedings, other referrals were received by the WCCB regarding alleged physical and sexual abuse of K.L, and at least three of those referrals identified plaintiff, H.L., as the perpetrator.  However, two of those referrals were investigated by caseworkers, including defendants Sara Gamola and Shannon Haywood, and were determined to be unfounded.

In late 2002/early 2003, counsel for H.L subpoenaed all records regarding the alleged sexual abuse of K.L.  However, the records containing the Mercy report were not produced at that time.

In May, 2003, K.L. reported H.L and his mother (paternal grandmother) for alleged sexual abuse.  After conducting several interviews and a psychological examination of K.L., caseworker/defendant Amy Patterson (now Amy Halter) found K.L. to be "consistent and credible in reporting sexual abuse."  Thereafter, plaintiff filed a petition for special relief asking to have defendant Patterson removed as a caseworker from this case, which the Court denied. The WCCB, through Patterson, filed an "indicated" report of abuse against H.L.

On July 16, 2003, Patterson sent a letter to H.L. notifying him of the "indicated" report and advising him of his right to appeal.

On July 17, 2003, the Court of Common Pleas of Westmoreland County entered primary physical custody and sole legal custody of K.L. to the child's mother, Nicole Kaufmann.  As part of the order, H.L. was permitted to have therapeutic supervised visits with K.L. together with Gregory Faulk of Total Family Services.

H.L, through his counsel, filed an appeal of the "indicated" report, and on January 22, 2004, the Department of Public Welfare issued a final order which sustained H.L.'s appeal of the

"indicated" report and expunged said report.

In February of 2004, plaintiffs' counsel motioned the Court that the Mercy report had not been provided in response to the subpoena of 2002. The Court of Common Pleas of Westmoreland County issued an order dated February 29, 2004, requiring the WCCB to produce a copy of its file since July 1, 2003.

In 2004, abuse referrals regarding the mother's paramour, Frank Giron, were asserted based upon the interpretation of a portion of the Mercy report produced by Solicitor Wade. However, an investigation of the referral regarding Frank Giron was performed by caseworker/defendant David Sever and the referral was determined to be unfounded and was expunged.

In March of 2004, the Court of Common Pleas of Westmoreland County ordered shared legal custody to H.L. and mother. H.L. had visits with K.L. and was granted a monitored period of partial physical custody pursuant to court order.

In November of 2004, another referral was received by the WCCB regarding physical abuse of K.L. by H.L, the details of which included the sharing of a comforter while camping, but, that report was determined to be unfounded.

Finally, on November 22, 2004, all professionals regarding K.L.'s care and attorneys for the parents and K.L met to determine her needs pursuant to the direction of the Court of Common Pleas of Westmoreland County. On February 10, 2005, H.L. and Nicole Kaufmann entered into a custody consent order through which the parties were to share legal custody of K.L. While initially the mother would have primary physical custoday and H.L. would have partial physical custody of K.L, the parties agreed that when H.L relocated to Latrobe, they

4

would share physical custody.  To date, no further docket activity has occurred in that action.

**III.    Standard of Review**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that

5

there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

**IV.   <u>Discussion</u>**

Defendants have moved for summary judgment on the basis that there is no record evidence to support plaintiff's allegations of any unconstitutional custom, policy or practice, and that plaintiff's claims of alleged violations of procedural and substantive due process rights are wholly unsubstantiated by the record.  Defendants also argue that the caseworkers are entitled absolute and/or qualified immunity, and finally, that plaintiff's state law claims are barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541.

To establish claim for violation of 42 U.S.C. § 1983 claim, a plaintiff must "demonstrate

that the conduct complained of was committed by a person acting under state law and 'that the

conduct deprived him of rights, privileges or immunities secured by the Constitution.'" *Piecknick*

*v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting *Carter v. City*

*of Philadelphia*, 989 F.2d 117, 119 (3d Cir. 1993)).

      Municipalities and other bodies of local government may be recognized as "persons"

within the meaning of section 1983, and such bodies may be held liable when it causes a

constitutional tort through "a policy statement, ordinance, regulation, or decision officially

adopted by that body's officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The

United States Supreme Court has pointed out that section 1983 also authorizes suit "for

constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

has not received formal approval through the body's official decisionmaking channels." *Id.* at

690-691.  Liability may not be proven under the respondeat superior doctrine, but instead must

be founded upon evidence that the governmental unit itself supported a violated of constitutional

rights. *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990).

      In essence, a civil rights plaintiff can recover against county government or a government

agency only if governmental policy or custom caused the violation of plaintiff's civil rights and

the municipality or county government acted with deliberate indifference to the rights of the

plaintiffs or others similarly situated. *Becerra v. Asher,* 105 F.3d 1042, 1045 (5th Cir. 1997),

cert. denied, 522 U.S. 824 (1997), *Searles v. Southeastern Pennsylvania Transportation*

*Authority*, 990 F.2d 789, 794 (3d Cir. 1993).

      It appears that the crux of this case revolves around plaintiff's allegations that defendants,

(1) failed to properly investigate or produce the Mercy report referencing the mother's paramour

as a potential perpetrator of abuse; and (2) caused his relationship with his daughter to be interrupted for a period of close to one year.

Although plaintiff alleges that defendants, Westmoreland County and Westmoreland County Children Bureau, established a policy or custom of failing to supervise its employees and agents, these bold allegations, without more, do nothing to advance plaintiff's burden to demonstrate that the county government acted with deliberate indifference to the rights of plaintiff or anyone else.

Viewing the facts in the light most favorable to plaintiff, plaintiff has failed to show that the failure to produce the Mercy report in a timely manner evidences a reckless indifference to the rights of others, nor does the failure to produce this report do anything to advance plaintiff's burden to show a causal nexus between the alleged deficiency and his claimed constitutional deprivations. *Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996). Plaintiff's allegations of defendants' failure to adequately train and/or supervise its employees (the individual defendants) also remain bold allegations without a single shred of record evidence to support these claims.

### **Substantive and Procedural Due Process**

Plaintiff has asserted substantive and procedural due process claims in his complaint alleging that his rights to familial integrity and privacy have been violated. The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government follows the dictates of procedural and substantive due process. *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125 (3d Cir. 1997), citing *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993). However, as the United States Court of Appeals for the Third Circuit set forth in *Croft*, a parent's liberty interest and

8

familial integrity is limited by the compelling governmental interest in the protection of children.

To determine whether this right has been abridged, the Court must consider the governmental

acts in question.  *Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999).

In *Miller*, the Court of Appeals set forth the following analysis of  the due process

evaluation, which this Court finds to be instructive:

> The touchstone of due process is the protection of the individual against
> arbitrary action of the government.  In cases like this,  where abusive action
> by a member of the executive branch is alleged, "only the most egregious
> official conduct can be said to be arbitrary in the constitutional sense."  To
> generate liability, executive action must be so ill-concieved or malicious
> that it "shocks the conscience."  Critically, under this standard, official will
> not be held liable for actions that are merely negligent.
>
> Although the "shocks the conscience" standard is problematic standing
> alone, it serves to "mark the beginning point in asking whether or not the
> objective character of certain conduct is consistent with our traditions,
> precedents, and historical understanding of the Constitution and its
> meaning."  The exact degree of wrongfulness necessary to reach the
> "conscience-shocking" level depends upon the circumstances of a particular
> case.

174 F.3d 368, 374-375 (internal citations omitted).

In *Miller*, a mother, her children and their attorney sued the city, the city's human services

department, social workers, and the children's hospital in connection with an emergency ex parte

child custody hearing that resulted in the removal of two children from the mother's custody.

The Court of Appeals found that there still existed substantial evidence that the child care worker

reasonably believed that the children were in danger of abuse, despite the fact that the child care

worker: requested all three children be produced for examination at the hospital even though he

suspected abuse of only one; met in secret with a hospital social worker; and, called the solicitor

to seek a restraining order even though the examining doctor told him that he could not be sure

whether the child received bruises accidently. *Id.* at 376-377.  The Court of Appeals, in affirming the district court's grant of summary judgment in favor of the defendants, stated that plaintiffs' procedural due process rights were not violated and they did not point to sufficient evidence of the predicate conscience-shocking behavior to support a substantive due process claim.

On the other hand, in *Croft*, a county social worker received an abuse report from an anonymous caller, and after interviewing the alleged perpetrator (the father), who denied the abuse, the caseworker gave the father an ultimatum that the child would be removed from the home and placed into foster care unless he left his home and had no contact with the child.  The Court of Appeals for the Third Circuit, in *Croft*, with facts which are not remotely analogous to the present case, held that this ultimatum, which was not based upon objectively reasonable grounds to believe the child had been sexually abused, constituted an arbitrary abuse of governmental power.

In the instant case, unlike *Croft* and more similar to the facts in *Miller*, the undisputed facts establish that Westmoreland County Children's Bureau received at least two abuse claims against H.L.  In fact, the child herself even made sexual abuse allegations against the father.  Like the situation in *Miller*, defendant Patterson had reasonable grounds to conduct an investigation, and that investigation included interviews with plaintiff and the child, as well as an examination by a professional to determine the accuracy of the child's report.  Unlike the actions of the caseworker in *Croft*, at no time did caseworker Patterson (or any other caseworker) recommend any separation of H.L from the family home, nor did she recommend any action which deprived H.L. of his ability to have at least supervised contact with his daughter.   On the contrary, the

10

evidence in this case demonstrates that the caseworkers acted appropriately under the circumstances and the matter was overseen by the Court of Common Pleas of Westmoreland County.  Although it appears that there was some confusion over the production of the Mercy report, the production of it (or more accurately the lack of production) does not come close to shocking the conscience; rather, the absence of the report represents, at best, negligent conduct on the part of the defendants.

Furthermore, although plaintiff makes a broad allegation of deprivation of his right to procedural due process, the failure to produce this report does nothing to advance plaintiff's claim for lack of procedural due process.  In order to state a procedural due process claim, a party must allege that he or she was deprived of a constitutionally protected liberty interest without the benefit of constitutionally required procedures.  *Matthews v. Eldridge*, 424 U.S. 319, 334-335 (1976).  Again, defendants' failure to produce the Mercy report in a timely manner represents, at best, negligence on the part of the defendants.  And, to the extent plaintiff claims that his due process rights were not protected regarding the investigation of his alleged abuse, the record reveals that plaintiff was not only interviewed as part of that investigation, he was also notified of the results of the investigation in a timely manner, and he was advised of his appeal rights.  In fact, plaintiff, who was represented counsel, successfully appealed that determination.  These facts do nothing to support a claim for a violation of procedural due process.[3]

---

[3]Because defendants' conduct simply does not rise to the level of a constitutional deprivation, this Court need not reach the question of whether qualified or absolute immunity applies,  *Sameric Corp. Of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 589, n.6 (3d Cir. 1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  However, the Court notes that there is authority for the proposition that Westmoreland County Children and Youth Services is absolutely immune, or in any event, the employees enjoy qualified immunity.  *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486 (3d Cir. 1997); *Bowser v. Blair County Children*

11

**State Law Claims**

In his complaint, plaintiff finally brings claims for intentional and negligent infliction of emotional distress against all defendants.  Defendants move for summary judgment on these claims as well, arguing that plaintiff's general allegations of negligence are barred by the Political Subdivision Tort Claims Act (P.S.T.C.A.), 42 Pa. C. S. § 8541.

The P.S.T.C.A only waives municipal immunity as to negligence claims based upon eight narrow exceptions found in 42 Pa.C.S. §8542(b)(1)-(8), and those exceptions are to be narrowly construed.  *Robey v. Chester County*, 946 F.Supp. 333 (E.D. Pa. 1996).  Because plaintiff's claims do not fall in any of these exceptions, they are barred.

**V.      Conclusion**

Plaintiff has failed to establish any pattern, practice, policy or custom of Westmoreland County which caused any constitutional deprivation, and his claims for due process violations fall far short of evidencing any arbitrary conduct, nor do his allegations rise to the necessary conscience shocking level.  Furthermore, plaintiff's state law claims for negligence are barred by the P.S.T.C.A.  Accordingly, this Court finds that summary judgment in favor of defendants and against plaintiff is appropriate, and therefore will grant defendants' motion for summary judgment (doc. no. 31) in its entirety.

An appropriate order follows.


s/Arthur J. Schwab_____
Arthur J. Schwab
United States District Judge

---

*and Youth Services*, 346 F. Supp. 2d 788 (W.D. Pa. 2004).

cc:    All counsel of record